## CARSWELL *vs*. WARE *et al*.

1. J. W., a parent, intending to divide and give off his negroes, made an allotment, in which certain negroes fell to the share of his son, J. M. W.; the negroes were not present. J. M. said to his son that he might send for the negroes when convenient, but retained the possession, and never delivered them to J. M. W., but he subsequently conveyed the negroes by deed to one in trust for the children of J. M. W. The negroes were subsequently levied on under executions against J. M. W., and were claimed by the trustee. *Held*, that the gift was not complete in J. M. W. for want of delivery, and that they were not subject to the payment of his debts.

Claim, in Wilkinson Superior Court. Tried before Judge Hansell, at April Term, 1860.

This was a claim interposed by James M. Ware a trustee of the children of John M. Ware, to certain negroes levied on by virtue of an execution in favor of John G. Gates, and transferred to Samuel M. Carswell, against John M. Ware, the father of the alleged *cestui que trusts*. Samuel M. Carswell dying pending the litigation, Matthew J. Carswell, his administrator, was made a party in his stead.

The *fi. fa.* was dated 11th October, 1855. Transferred for value received by Gates to Samuel Carswell, 19th Dec., 1856. Levied 6th January, 1857, " On the following negroes, to-wit: Sarah, John, Nellie, Caroline and Susan, as the property of the defendant, pointed out by E. Cumming, Esq."

It was agreed by counsel on both sides, that the other cases pending and involving the same questions as presented in this case be considered at issue, and abide the result of this case, and that the testimony taken by commission in each and all of those cases, be read in this.

The testimony is voluminous, and it is deemed unnecessary to set it out. Suffice it to say, that the plaintiff in support of his right to subject the negroes to the lien of his *fi. fa.* relied upon the effect of a division made by James Ware of his slaves amongst his children in December, 1854, at which time those in controversy were allotted and assigned to John M. Ware, one of the sons, and contended that upon said division the negroes vested in, and became absolutely the property of, said John M., and subject to judgments against him. Claim-

Carswell *vs.* Ware *et al.*

ant insisted that although there was a division and allotment of the negroes by James Ware, at the time mentioned, among his children, yet that there was no delivery of the lot intended for John M., and that before there was any delivery vesting title in him, or extinguishing the title of said James Ware, the father, he executed a deed conveying said negroes to the children of said John M. Ware, and constituted James M. Ware trustee for said children, and that such was his intention at the time.    The question in this case was, whether there had been such delivery of the slaves to John M. Ware at, and after the division, and before the execution of the deed to the children, which took place a few days after the division as to vest title in him ?

The jury found in favor of the plaintiff in *fi. fa.*, and that the negroes were the property of John M. Ware and subject to the executions against him.

Claimant moved for a new trial on the following grounds :

1st.  Because the verdict was contrary to law and the charge of the Court.

2d.  Because the verdict was decidedly and strongly against the weight of evidence.

3d.  Because the Court erred in admitting the sayings of James Ware, the father of defendant in *fi. fa.*, and owner of the negroes, as testified to by John G. Gates, which sayings were made after the division, and after the gift of the negroes was alleged to have been made to his son John M. Ware.

4th.  Because the Court charged the jury, that there might be a constructive delivery to John M. Ware—that delivery may be actual or constructive.

After argument, the presiding Judge sustained the motion, set aside the verdict and ordered a new trial, on the ground that said verdict was decidedly and strongly against the weight of evidence.

To which decision counsel for plaintiff excepted.

Cochran & Cumming, J. R. Cochran & Junius Wingfield, for plaintiff in error.

N. A. Carswell, deGraffenreid & Rutherford, *contra.*

Carswell *vs.* Ware *et al.*

*By the Court.*—LYON, J., delivering the opinion.

James Ware, the father of John M. Ware, the defendant in execution, called his children together one day in the latter part of the year 1854, and made an allotment of his negroes, for the purpose of division and distribution among them.    In that appointment, the negroes levied on fell to the share of the defendant.    The negroes do not appear to have been present at the time.    After the allotment, James Ware, the father, said to John M. that he could send for the negroes whenever it was convenient; he also said at that time, and frequently before, that the part which fell to John M. he intended to settle on the wife and children, or the children of John M.    This share, so ascertained, was worth more than an equal one, and he was required to pay in some money to make it equal, and he did, on that day, pay over to one of the other distributees something like $150 00; but whether he paid it out of his own money, or out of the proceeds of one of the negroes named Sam, that his father sold to Brenton Ware after the division, is not very clear.    Most likely from his own money.    He further retained the possession of all the negroes for a week or two after to finish gathering his crop.    There was no other delivery or act done that might amount to one, than what I have stated.    James Ware subsequently refused to deliver the possession to John M., but conveyed them by deed, and delivered the negroes to James M. Ware, in trust for the children of John M.    These are all the facts, and the substance of all the testimony which it is necessary to notice.    And upon them the question arises, whether the title to the negroes vested in John M. Ware, so as to subject them to the payment of his debts?    That question depends entirely on the fact, whether the negroes were delivered to John M. in his own right, or whether the permission given to John M. to send for the negroes amounted to a delivery? and that is the whole question in this case.

1. There is no doubt but that James Ware intended to give the negroes, but whether to John M. or to his children, is not equally clear; the weight of testimony is, that he intended to give them to his children, and not to him.    I might say almost overwhelmingly so; but whether the one way or the other, it is not necessary to inquire, as we hold, that the gift was not good, as a gift to either, for want of delivery,

but that the title, notwithstanding the intention of James Ware in making the allotment, remained in him until it passed out by the deed and delivery under it to James M. Ware, in trust for the children of John M.    To constitute a good parol gift, there " must be an actual delivery, so far as the subject is capable of delivery.    It must be *secundum subjectam materiam*, and be the true and effectual way of obtaining the command and dominion of the subject.    *If the thing be not capable of actual delivery*, there must be some act equivalent to it.    The donor must part, not only with the dominion, but with the possession of the property."    2 *Kent*, 438.    In *Hawkins vs. Blewett*, 2 *Esp.*, 663, the possession of the thing was actually given, but because the thing, the box given, was sent back to the donor the next day, at his request, to enable him to get a pair of breeches out of it, the Court held, that the gift was not good, as the donor had not parted with the dominion of the thing intended to be given.    In *Bunn vs. Markham* 7 *Taunt*, 230.    A person supposing himself to be *in extremis*, caused India bonds, bank-notes and guineas, to be brought out of his iron chest and laid on his bed ; he then caused them to be sealed up in three parcels, and the amount of the contents written on them, with the words, " for Mrs. and Miss Clifton," the plaintiff ; he then directed the brother to replace them in the iron chest to be locked up, the keys to be sealed up and directed " to be delivered to J," (his solicitor and one of the executors) after his decease, and replaced in his custody, near his bed ; and afterwards spoke of this property as given to the plaintiffs ; the Court held, that this was not *donatio causa mortis*, for want of a sufficient delivery and continuing possession.    Chancellor Gibbs said, " There is no case which decides that the donor may resume the possession and the *donatio* continue ; but all the cases agree, that if the donor resumes the possession, it ends the gift."    Both of these were cases of gifts *causa mortis*, but the rule as to delivery is the same, whether it be gift *inter vivos* or *causa mortis*.    2 *Kent*, 438.    In the case before us, the subject being negroes, was perfectly capable of an immediate delivery. There was nothing to prevent it ; but there was no actual delivery, nor is it pretended that there was.    John M. Ware did not get the possession, nor did he have the command or dominion : on the contrary, the possession and dominion remained with James Ware, so effectually, that John M. could

get neither.   James Ware did tell John M. that he might send for the negroes when it was convenient.   This was equivalent to his saying, " send for them, and I will deliver them ;" it amounted to a promise to give and nothing more; the *locus penitentiæ* still remained.   No case was read to us on the trial; I have been able to find none, and I apprehend that none can be found, in which such an act as this was ever held to amount to a gift or change of title.

Judgment affirmed.